UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARC ALLEN, | ) | CASE NO. 5:15-cv-1602 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| PPG INDUSTRIES, INC., | ) | **AND ORDER** |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion of defendant PPG Industries, Inc. ("PPG" or "defendant") for judgment on the pleadings. (Doc. No. 21 ["Motion"].) Plaintiff Marc Allen ("Allen" or "plaintiff") filed his memorandum in opposition (Doc. No. 25 ["Opp'n"]), and PPG filed its reply (Doc. No. 26 ["Reply"]). For the reasons set forth herein, the motion is denied.

## I. BACKGROUND

Plaintiff initiated this action in the Summit County Court of Common Pleas. On August 12, 2015, PPG timely removed it on the basis of diversity of citizenship. (Doc. No. 1.) On November 13, 2015, plaintiff amended the complaint, with leave. (Doc. No. 15 ["Am. Compl."].) PPG filed it answer to the amended complaint (Doc. No. 19), and thereafter timely filed the instant motion.

Plaintiff alleges that, on July 15, 2013, he was employed by PPG at a manufacturing facility in Barberton, Ohio, when a long-time co-employee, Wendy Breiding, become entangled in a spindle winder on a machine, causing "horrific injuries that resulted in her death." (Am. Compl. ¶¶ 2, 3, 28). Plaintiff alleges that he "witness[ed] the gruesome and horrific injury and death of his co-employee." (*Id.* ¶ 29.) Plaintiff further alleges that Ms. Breiding's injuries were

caused by PPG's alleged removal of safety features that would have protected her when, as was PPG's alleged policy, she was "encouraged … to enter the winder/roll area while the winder was in full operation so that production of product would not be disrupted." (*Id.* ¶ 27.) Plaintiff alleges that PPG owed him a "duty … to exercise reasonable and or [sic] ordinary care to keep and maintain its premises in a condition reasonably safe and had a duty to take such precautions as were reasonably necessary to protect [him] from harm that was reasonably foreseeable." (*Id.* ¶ 31.) Plaintiff alleges that, as a result of witnessing Ms. Breiding's "horrific and gruesome death[,]" which was allegedly the "direct and proximate result of the described carelessness and negligence of [PPG]," he has "sustain[ed] severe mental pain and suffering and psychological injuries, including but not limited to, post-traumatic stress disorder, anxiety and depression and the loss of capacity for the enjoyment of life all of which conditions are permanent in nature." (*Id.* ¶¶ 32, 33.)

Defendant now seeks judgment on the pleadings, in the form of dismissal with prejudice, arguing that plaintiff's negligence claim is precluded by the Ohio statute providing immunity to an employer who participates in Ohio's workers' compensation program. *See* Ohio Rev. Code § 4123.74.

## II. DISCUSSION

### A.   Standard Under Fed. R. Civ. P. 12(c)

A party may move for judgment on the pleadings after the pleadings are closed, but early enough not to delay trial. Fed. R. Civ. P. 12(c). "The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citations omitted). "'For purposes of a motion for judgment on the pleadings, all well-pleaded material

allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.'" *Id.* (quoting *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 581 (6th Cir. 2007)).

## B.     The Parties' Respective Positions

Defendant argues in its motion for judgment on the pleadings that Ohio's workers' compensation system "is the exclusive remedy for employees who develop injuries, diseases, or bodily conditions within the course of or arising from their employment." (Motion at 133,[1] citing Ohio Rev. Code § 4123.74; Ohio Const. art. II, § 35.)

Ohio Rev. Code § 4123.74 provides:

> Employers who comply with section 4123.35 of the Revised Code [i.e., employers who pay premiums into the workers' compensation fund] shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment, or for any death resulting from such injury, occupational disease, or bodily condition occurring during the period covered by such premium so paid into the state insurance fund, or during the interval the employer is a self-insuring employer, whether or not such injury, occupational disease, bodily condition, or death is compensable under this chapter.

The statute does not define "bodily condition." Relying on dictionary definitions, defendant asserts that plaintiff's alleged psychological injuries, incurred as the result of a workplace event, are "bodily conditions" because they "are neurobiological in nature," that is, "originat[ing] in and affect[ing] the functioning of the brain, and … associated with biochemical and structural changes in the brain and the body." (*Id.* at 136.) As such, the conditions, according to defendant, "fall within the employer immunity protections provided by [§] 4123.74." (*Id.* at 132.)

---

[1] All page number references are to the page identification number generated by the Court's electronic docketing system.

Plaintiff admits he was not physically injured in any way by PPG; but he rejects PPG's "attempt to construe post-traumatic stress disorder, anxiety, and depression as 'bodily' [simply] because they affect an organ, namely, the brain." (Opp'n at 155, citing Motion at 135-36.) Plaintiff asserts that the Ohio Supreme Court "has expressly stated that an employee who sustains a purely psychological injury is not barred from pursuing a common law action against an employer." (*Id.* at 156, citing *Bunger v. Lawson Co.*, 696 N.E. 2d 1029 (Ohio 1998).)[2]

**C.     Analysis**

Defendant's attempt to distinguish a psychological condition from an "injury" and to bring plaintiff's various alleged psychological conditions within the meaning of "bodily conditions" is to no avail in light of Ohio case law.

In *Bunger*, an employee alleged that she suffered a psychological injury (PTSD) resulting from a robbery at the store where she was employed. She filed a workers' compensation claim, which was denied because Ohio Rev. Code § 4123.01(C)(1) "excludes compensation for psychological injuries that are not accompanied by physical injury." *Bunger*, 696 N.E. 2d at 1030. The employee appealed that denial to the common pleas court, and also filed a tort claim against her employer, alleging that the robbery and the resulting psychological injuries were due to her employer's negligence. The trial court granted the employer's motions to dismiss for failure to state a claim upon which relief could be granted, concluding that workers'

---

[2] Plaintiff also relies on *Armstrong v. John R. Jurgensen Co.*, 990 N.E. 2d 568 (Ohio 2013) for the proposition that § 4123.01(C) "excludes psychiatric conditions that did not arise out of a physical injury from the definition of injury." (Opp'n at 154.) He claims he had no physical injury and, therefore, his psychological injury stands alone, outside the coverage of the statute. That is correct as far as it goes. Ordinarily, psychiatric conditions are *not* covered under the workers' compensation statute *unless* they arise from a workplace injury or occupational disease. In *Armstrong*, the employee was attempting to recover the statutory benefits for a psychological injury that he claimed resulted from a physical injury suffered in the course of his employment. The court found no causal connection and, therefore, ruled that the psychological condition was not covered by the statute. These facts distinguish the instant case from *Armstrong*.

4

compensation benefits were not permitted because Bunger's psychological condition did not result from a physical injury, and that the employer was immune from her negligence claim. The court of appeals affirmed, and a discretionary appeal was allowed. The Supreme Court of Ohio did not disagree that the workers' compensation statute was inapplicable, foreclosing relief under that statute. As to the negligence claim, however, it held that §§ 4123.01(c) and 4123.74 "do not foreclose an employee who has suffered purely psychological injuries from pursuing a common-law remedy against his or her employer." *Bunger*, 696 N.E. 2d at 1030, syllabus. The court in *Bunger* noted: "Since psychological injuries are removed from the coverage of the Act and the concomitant statutory immunity the Act imparts, the common law may allow relief for certain workers." *Id.* at 1032.

In its reply brief, defendant argues that *Bunger* is inapplicable because it only dealt with the definition of "injury" in connection with § 4123.74. (Reply at 161.) Strictly speaking, that is true. The court focused on the definition of "injury" because that was the basis for the lower courts' rejection of Bunger's negligence claim.

But there is no avoiding the straightforward ruling of the Ohio Supreme Court that "R.C. 4123.01(C) and 4123.74 do not foreclose an employee who has suffered *purely psychological injuries* from pursuing a common-law remedy against his or her employer." *Bunger*, 696 N.E. 2d at 1030, syllabus (emphasis added).[3] The court in *Bunger* did not parse the phrases of either

---

[3] Indeed, in ruling that the plaintiff in *Bunger* could have a viable cause of action for a purely psychological injury, the majority in *Bunger* observed: "[T]he common law itself does not leave much room for recovery for purely psychological injuries. A claim of negligent infliction of emotional distress is limited to instances 'where the plaintiff has either witnessed or experienced a dangerous accident or appreciated the actual physical peril.' *Heiner v. Moretuzzo* (1995), 73 Ohio St.3d 80, 86-87, 652 N.E.2d 664, 669. Bunger may be one of the few employee plaintiffs who actually could have a viable cause of action for negligent infliction of emotional distress." *Bunger*, 696 N.E.2d at 1032.

5

statutory section; rather it plainly and simply held that a common-law remedy for a purely psychological workplace injury was not foreclosed by either statute.

If this Court were writing on a clean slate, it would find compelling defendant's argument that "*Bunger* also relied upon the same flawed analysis as the [p]laintiff herein[.]" (Reply at 161-62, citing the dissent in *Bunger* for the proposition that plaintiff's psychiatric conditions are "bodily conditions" within the meaning of the statute.) But this Court must apply the majority opinion in *Bunger*. Flawed as it might be, it is a pronouncement of the Ohio Supreme Court about an Ohio statute. *See Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) ("In applying Ohio law, we must 'follow the decisions of the state's highest court when that court has addressed the relevant issue.'") (quoting *Talley v. State Farm & Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000)).[4]

### III. CONCLUSION

For the reasons discussed herein, defendant's motion for judgment on the pleadings (Doc. No. 21) is **denied**.

**IT IS SO ORDERED**.

Dated: September 23, 2016

                                    **HONORABLE SARA LIOI**
                                    **UNITED STATES DISTRICT JUDGE**

---

[4] In both its motion and its reply brief, defendant devotes considerable space to arguments about the public policy purpose of the workers' compensation statutes and to a court's duty to interpret statutes in a manner that gives effect to the intent of the legislature. This Court has no doubt that both of those principles are true; but it *also* has no doubt that the Ohio Supreme Court in *Bunger* was mindful of those principles when it reached its decision. This Court's role in a diversity case, under the equally valid principle of federalism, is to honor the pronouncements of the highest state court charged with interpreting state law.